Katherine BARNHART *v.* CITY OF FAYETTEVILLE, et al.

93-336                                        875 S.W.2d 79

Supreme Court of Arkansas
Opinion delivered May 2, 1994

*E. Kent Hirsch, P.A.*, by: *E. Kent Hirsch* and *Pearson, Evans & Chadwick*, by: *Marshall Dale Evans* and *George K. Cracraft*, for appellant.

*The Niblock Law Firm*, by: *Katherine C. Gay* and *Walter R. Niblock*, for appellees.

*Friday, Eldredge & Clark,* by: *Herschel H. Friday, William H. Sutton, Larry W. Burks* and *Jeffrey H. Moore,* for appellee Financial Guaranty Ins. Co.

*Everett, Mars & Stills,* by: *John C. Everett,* for Amicus Curiae James M. McCord.

STEELE HAYS, Justice. This is a class action brought by appellant Katherine Barnhart on behalf of herself and other Fayetteville taxpayers and sanitation ratepayers against the Northwest Arkansas Resource Recovery Authority (Authority), Union National Bank of Little Rock, Financial Guaranty Insurance Company (FGIC), Washington County and the Cities of Fayetteville (City) and West Fork (appellees). A.G. Edwards & Sons, Inc., and the partners of the Rose Law Firm and of Wright, Lindsey and Jennings were joined as third party defendants.

Fayetteville, West Fork and Washington County had formed the Authority under the provisions of Act 699 of 1979. That act authorized municipalities and counties to organize authorities for the disposal of solid waste, including the power to later withdraw, without impairment of financial obligations incurred during participation. The project's purpose was to plan, construct and finance an incinerator to burn solid waste. The Authority's nine member board of directors consisted of seven Fayetteville directors and one each from West Fork and Washington County. The plan was for the incinerator to generate steam or heat for the production of electricity.

The Authority issued bonds totalling $22,405,000 to finance the development and construction of the facility. A site was selected and a construction contract entered into. The Authority also contracted with Financial Guaranty Insurance Company (FGIC) to insure the repayment of the bonds, obligating FGIC to pay any principal or interest due on the bonds but unpaid by the Authority. Union National Bank of Little Rock was named as trustee for the bondholders. In furtherance of the project the City entered into a Waste Disposal Agreement (WDA) with the Authority by which the City agreed to unconditionally guarantee the debts of the Authority, including debt service on the bonds. The revenue stream from which the bonds were to be repaid was provided by the WDA which stated that its members would deliver

waste to the project and pay processing charges ("tipping fees") for the disposal of such waste. Tipping fees were payable solely from income received by the cities and county from sanitation fund revenues and such fees had to be sufficient to pay operating expenses of the facility and debt service on the bonds.

While construction was under way public opposition over site selection and environmental concerns rose to such a level that the Fayetteville board of directors submitted the question of continuing the project to a non-binding vote by the voters of Fayetteville. On March 8, 1988, a majority of those voting voted against continuing the project and on March 9 Fayetteville notified the Authority it was withdrawing. On March 11 the Authority terminated the project.

Some $8,000,000 in bond proceeds had by then been expended. In order to retire the bonds at the first nonpenalty call date, the City of Fayetteville enacted Ordinance No. 3444 which increased the sanitation fees by $2.02 per month for residential and commercial users. After the passage of Ord. No. 3444, appellant Katherine Barnhart filed this class action against the appellees, the Bank and FGIC, alleging that the collection of revenue under Ord. No. 3444 constituted an illegal exaction.

The case was tried as to the issues between the plaintiff and the defendants, with the cross-claim and third party claims specifically reserved for a later date "pursuant to Rule 42, Arkansas Rules of Civil Procedure." The order recites the finding of the chancellor that Ord. No. 3444 is neither an illegal exaction nor ultra vires and concludes: "Pursuant to the rule 54(b) Arkansas Rules of Civil Procedure, it is specifically determined by the Court that the entry of this order shall be a Final Judgment on the Complaint of the Plaintiff."

While ARCP 42(b) does allow the trial court to order separate trials under certain circumstances, a separate trial order under Rule 42(b) usually results in but one judgment. Wright Miller, *Federal Civil Procedure*, § 2387. And an order granting separate trials under Rule 42 is not appealable as a final judgment. "There is no final judgment until all of the issues have been resolved and judgment entered on the whole case unless a lesser judgment is certified under the provisions of Rule 54(b)."

*Id.* at § 2392.

■ ARCP 54(b) provides that the trial court may direct a final judgment as to one of several parties or claims, "only upon an express determination, supported by specific factual findings, that there is no just reason for delay." There is no such determination in this case. Some years ago we emphasized that language in *Arkhola Sand & Gravel Co.* v. *Hutchinson*, 291 Ark. 570, 726 S.W.2d 674 (1987):

> We give notice that merely tracking the language of Rule 54(b) will not suffice; the record must show facts to support the conclusion that there is some danger of hardship or injustice which would be alleviated by an immediate appeal.

That admonition has been reiterated numerous times since. *See Davis* v. *Wausau Insurance*, 315 Ark. 330, 867 S.W.2d 444 (1993); *Franklin* v. *OSCA, Inc.*, 308 Ark. 409, 825 S.W.2d 812 (1992); *Fisher* v. *Citizens Bank* 307 Ark. 258, 819 S.W.2d 8 (1991); *Austin* v. *First National Bank*, 305 Ark. 456, 808 S.W.2d 773 (1991):

> In this case before us, the judgment granting the motion for interlocutory appeal does not include specific findings of any danger of hardship or injustice which could be alleviated by an immediate appeal. Nor does the judgment detail facts which establish that such a hardship or injustice is likely. Due to this noncompliance with Rule 54(b), we dismiss this appeal without prejudice to refile it at a later date.

*Id.*, p. 332.

■ No such determination was made in this case and, accordingly, the appeal is dismissed.